IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____FILED _____ENTERED
_____LODGED_____RECEIVED

SEP 3 0 1999

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                    DEPUTY

KULTHOUM A. MEREISH,                :

       Plaintiff,        :

v.                                  :        CIVIL NO. L-98-1696

LOUIS CALDERA,                      :
SECRETARY OF THE ARMY,
       Defendant.        :

## MEMORANDUM

Plaintiff Kulthoum Mereish brought this action against Louis
Caldera, the Secretary of the Army, alleging that the Army
discriminated against her on the basis of age and national
origin, in violation of the Age Discrimination in Employment Act
of 1967, as amended, 29 U.S.C.A. § 621, et seq. (West 1994),
Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-
5(f) (West 1994), and 42 U.S.C.A. § 1983 (West 1994).  The
defendant has filed a Motion for Summary Judgment.  The parties
have briefed the issues and the Court dispenses with a hearing.
See Local Rule 105.6 (D. Md. 1997).  For the following reasons,
the Court shall GRANT in part and DENY in part the Motion for
Summary Judgment.



I.    **Background**

Plaintiff is a 45 year old female of Arab descent who was born in Jordan and emigrated to the United States in 1954. Following her emigration, the plaintiff obtained a Masters degree in Biomedicinal Chemistry and a Doctorate degree in Phamaceutical-Medical Services.

The United States Army Medical Research Institute of Infectious Diseases (USAMRIID) is an Army laboratory whose primary mission is to research and develop counter-measures against biological warfare threats.

The United States Army Medical Research and Material Command (USAMRMC) is the entity from which USAMRIID receives its commands and to which USAMRIID reports. Both USAMRIID and USAMRMC are located at Fort Detrick, Maryland.

Colonel David Franz was the plaintiff's senior supervisor during the time of the RIF. In 1992, Col. Franz became the deputy commander of USAMRIID, and in 1995 he became the commander. (See Def. Mem. Supp. Summ. J. Ex. 5, at 4.)

After the plaintiff completed her education, the plaintiff was commissioned as a Captain in the United States Army-Medical Corp Services. (See Mereish Aff.) In 1986, the plaintiff was transferred to USAMRIID, where she later became a member of USAMRIID's civilian research staff in 1990. Until May 1997,

Plaintiff was employed by the USAMRIID toxinology division as a pharmacologist, grade GS14.  In 1996, Col. Franz detailed the plaintiff to the Biological Arms Control Treaty Office (BACTO). The plaintiff remained on detail to BACTO through the RIF.  (See Def. Mem. Supp. Ex. 3, at 53.)

Beginning in 1991, due to budget cuts, USAMRMC mandated that USAMRIID decrease the size of its civilian personnel by specified amounts. (See Def. Mem. Supp. Summ. J. Ex. 1, at 41-42.)    From 1991-1994, USAMRIID achieved these cuts solely through the Voluntary Early Retirement Authority(VERA) and Voluntary Separation Incentive Programs (VSIP).  (See id.)  In 1995, however, USAMRIID was unable to satisfy the quotas through mere attrition.  Col. Franz therefore effected a reduction in force (RIF), eliminating positions that could most easily be contracted out, namely one mathematician, four animal caretakers, and two lab workers.  (See Def. Mem. Supp. Summ. J. Ex. 6.)  Four of these individuals were over forty years old, one individual was 29 years old, one individual was 34 years old, and one individual was 37 years old.  (See id.)  All of those RIFed in 1995 were Caucasian.  (See id.)

In 1996, pursuant to another order to decrement personnel, Col. Franz RIFed one statistician, two physiologists, and two bio science lab technicians.  (See id.)  Three of these individuals

were over forty years old, one individual was thirty-seven years old, and one individual was twenty-six. (See id.) Four of the employees RIFed were Caucasian and one employee was Chinese. (See id.) Prior to this RIF, Col. Franz wrote a memorandum seeking relief from the ordered decrement. (See Pl. Mem. Opp. Summ. J. Ex. 2) Col. Franz stated that during the decrements from 1997 to 1999 he wished to protect those scientists who were "younger" and "junior." (Id.)

In May 1996, the Secretary of the General Staff of USAMRMC informed Col. Franz that USAMRIID must decrement eleven more civilian positions. (See Def. Mem. Supp. J. Ex. 1, 7.) Similar to the previous year, Col. Franz wrote a memorandum seeking relief from the ordered decrements. (See Def. Mem. Supp. J. Ex. 1, 8.) This memorandum emphasized that any further cuts in personnel would affect USAMRIID's ability to attract and retain qualified scientists necessary for the mission of the research institute. USAMRMC denied Col. Franz's request for relief from these cuts. (See Def. Mem. Supp. J. Ex. 1, 9.)

Following the decrement orders, Col. Franz RIFed the remaining three physiologists, one pharmacologist, one secretary, one information management specialist, and one computer assistant. (See Def. Mem. Supp. J. Ex. 1, 6.) Among those RIFed was the plaintiff. All of the positions RIFed, except for the

secretary, were held by individuals over the age of 40.  The
secretary was 39 at the time of the RIF.  In addition, two of the
individuals, including the plaintiff, were of Arab descent.  Four
individuals were Caucasian, and one individual was Black.  (See
id.)

Col. Franz had sole discretion over the positions to RIF.
(See Def. Mem. Supp. J. Ex. 1, at 46.)  Col. Franz explained that
he based his decisions of which positions to RIF solely on
mission need.  (See id. at 50-51.)  According to Col. Franz,
positions such as physiologists and pharmacologists were known
throughout the institute to have been on the "endangered list"
for more than one year. (See id.; Def. Mem. Supp. Summ. J. Ex.
15.)  Col. Franz  believed that Plaintiff's position as a
pharmocologist served a lesser role toward the institute's
mission than other positions such as microbiologists and gene
engineers because pharmacologic agents for toxins would not make
a "big difference for the soldier."  (Def. Mem. Supp. Summ. J.
Ex. 1, at 51.)

Prior to leaving USAMRIID in 1997, Plaintiff claims to have
suffered from various incidents of discrimination based on her
national origin.  While working under Col. Franz, a group of
employees formed the "Camel Club," a group established to
ridicule Arab Americans working at USAMRIID.  The ridicule

reached its peak in 1992, when the Camel Club distributed a poem mocking Arab Americans, specifically mentioning individuals by name.  (See Def. Mem. Supp. Summ. J. Ex. 17.)  After an investigation, USAMRIID severely sanctioned two of the members of the Camel Club.  (See Def. Mem. Supp. Summ. J. Ex. 18.)  In response to the sanctions, these two individuals resigned from their employment at USAMRIID.  (See id.)

Plaintiff claims to have suffered other discriminatory treatment as well.  After the Camel Club disbanded, the plaintiff claims that Col. Franz made statements correlating the plaintiff's actions to her national origin.  One of these statements included a reference to Dr. Taha, the biologist responsible for the development of the Iraqi biological weapons program.  (See Mereish Aff.)  Although the plaintiff considered this reference to be negative, Col. Franz testified that Dr. Taha was also one of the scientists who toured with Col. Franz when he went to Iraq with the United Nations Commission on Iraq.  (See Mereish Aff.; Def. Mem. Supp. Summ. J. Ex. 5, at 16.)  In addition to these comments, after Col. Franz informed the plaintiff that her position was subject to the RIF, Col. Franz described the plaintiff's childhood perceptions of Saddam Hussein to the plaintiff and two other women in the room.  (See Meriesh Aff.)

Upon termination, Plaintiff filed a formal complaint with the Department of Defense Office of Complaint Investigations (OCI), alleging discrimination based on age, race, and national origin; the instant suit followed.

## II.  Discussion

The Court understands the plaintiff to state three separate claims.  First, the plaintiff claims that Col. Franz terminated her employment based on the plaintiff's national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-5(f) (West 1994).  Second, the plaintiff claims that Col. Franz terminated her employment at USAMRIID based on the plaintiff's age in violation of the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C.A. § 621, et seq. (West 1994).  Finally, the plaintiff claims that USAMRIID discriminated against her based on age and national origin in violation of 42 U.S.C.A. § 1983 (West 1994).

The Court finds that the facts in this case are highly similar to those discussed in Assaad v. Caldera, Civ. No. L-98-3828.  The Court therefore incorporates the reasoning that it set forth in its Order in Assaad granting in part and denying in part Defendant's Motion for Summary Judgment.

### III. Conclusion

For the reasons set forth in <u>Assaad</u>, the Court shall, by separate Order, GRANT in part and DENY in part Defendant's Motion for Summary Judgment. The Court also will ORDER the parties to conduct limited discovery on the issue of Plaintiff's ADEA claim focusing on (i) the ages of the retained scientists, and (ii) the qualifications of the retained scientists, as compared to the qualifications of the RIFed scientists. The Court will then provide the defendant an opportunity to file another Motion for Summary Judgment on Plaintiff's ADEA claim, if such a motion is necessary.

Dated this 29TH day of September, 1999.

Benson Everett Legg
United States District Judge