IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KULTHOUM A. MEREISH,　　　　　:
　　　　Plaintiff,　　　　　　　:

　　v.　　　　　　　　　　　　　:　　　CIVIL NO. L-98-1696

LOUIS CALDERA,　　　　　　　　:
SECRETARY OF THE ARMY,
　　　　Defendant.　　　　　　　:

MEMORANDUM

　　Plaintiff Kulthoum Mereish brought this action against Louis Caldera, the Secretary of the Army, alleging that the Army discriminated against her on the basis of age and national origin, in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. § 621, et seq. (West 1994), Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-5(f) (West 1994), and 42 U.S.C.A. § 1983 (West 1994).  On September 29, 1999, the Court granted Defendant's Motion for Summary Judgment on all counts but the age discrimination count.  The defendant has now filed a second Motion for Summary Judgment on the age discrimination count.  The parties have briefed the issues and the Court dispenses with a hearing.  See Local Rule 105.6 (D. Md. 1999).  For the following reasons, the Court shall GRANT the Motion for Summary Judgment.

I.   Background

　　Plaintiff is a 45 year old female who emigrated from Jordan to the United States in 1954.  Following her emigration, the

plaintiff obtained a Masters degree in Biomedicinal Chemistry and a Doctorate degree in Phamaceutical-Medical Services.

The United States Army Medical Research Institute of Infectious Diseases (USAMRIID) is an Army laboratory whose primary mission is to research and develop counter-measures against biological warfare threats.

The United States Army Medical Research and Material Command (USAMRMC) is the entity from which USAMRIID receives its commands and to which USAMRIID reports. Both USAMRIID and USAMRMC are located at Fort Detrick, Maryland. Since 1995, Colonel David Franz was the commander of USAMRIID.

After the plaintiff completed her education, the plaintiff was commissioned as a Captain in the United States Army-Medical Corp Services. In 1986, the plaintiff was transferred to USAMRIID, where she later became a member of USAMRIID's civilian research staff in 1990. Col. Franz was the plaintiff's senior supervisor. Until May 1997, Plaintiff was employed by the USAMRIID toxinology division as a pharmacologist, grade GS14. In 1996, Col. Franz detailed the plaintiff to the Biological Arms Control Treaty Office (BACTO).

Beginning in 1991, due to budget cuts, USAMRMC mandated that USAMRIID decrease the size of its civilian personnel by specified amounts. (See Def. Ex. 1.) From 1991-1994, USAMRIID achieved these cuts solely through the Voluntary Early Retirement Authority (VERA) and Voluntary Separation Incentive Programs (VSIP). (See id.) In 1995, however, USAMRIID was unable to satisfy the quotas through mere attrition. Col. Franz therefore

effected a reduction in force (RIF), eliminating positions that could most easily be contracted out, namely one mathematician, four animal caretakers, and two lab workers. (See Def. Ex. 1, 9.) Four of these individuals were over forty years old, one individual was 29 years old, one individual was 34 years old, and one individual was 37 years old. (See Def. Ex. 9.)

In 1996, pursuant to another order to decrement personnel, Col. Franz RIFed one statistician, two physiologists, and two bio-science lab technicians. (See id.) Three of these individuals were over forty years old, one individual was thirty-seven years old, and one individual was twenty-six. (See id.) Prior to this RIF, Col. Franz wrote a memorandum seeking relief from the ordered decrement. (See Def. Ex. 10.) Col. Franz stated that during the decrements from 1997 to 1999 he wished to protect those scientists who were "younger" and "junior." (Id.)

In May 1996, the Secretary of the General Staff of USAMRMC informed Col. Franz that USAMRIID was to decrement eleven more civilian positions. (See Def. Ex. 1, 11.) As in the previous year, Col. Franz wrote a memorandum seeking relief from the ordered decrements. (See Def. Ex. 1, 12.) This memorandum emphasized that any further cuts in personnel would affect USAMRIID's ability to attract and retain qualified scientists necessary for the mission of the research institute. USAMRMC denied Col. Franz's request for relief from these cuts. (See Def. Ex. 1, 13.)

Following the decrement orders, Col. Franz RIFed the remaining three physiologists, one pharmacologist, one secretary,

one information management specialist, and one computer assistant. (See Def. Ex. 9.) Among those RIFed was the plaintiff. All of the positions RIFed, except for the secretary, were held by individuals over the age of 40. The secretary was 39 at the time of the RIF. (See id.)

Col. Franz had sole discretion over which positions to RIF. (See Def. Ex. 1.) Col. Franz explained that he based his decisions of which positions to RIF solely on mission need. (See id.) According to Col. Franz, positions such as physiologists and pharmacologists were known throughout the institute to have been on the "endangered list" for more than one year. (See id.) Col. Franz believed that Plaintiff's position as a pharmocologist contributed a lesser role toward the institute's mission than did other positions such as microbiologists and gene. (See Def. Ex. 1.)

Upon termination, Plaintiff filed a formal complaint with the Department of Defense Office of Complaint Investigations (OCI), alleging discrimination based on age and national origin; the instant suit followed. The Court previously granted Summary Judgment in favor of the defendant on Plaintiff's allegation of discrimination based on national origin, but denied without prejudice Defendant's Motion for Summary Judgment on the age discrimination claim.

## II. Discussion

The Court finds that the facts in this case are highly similar to those discussed in Assaad v. Caldera, Civ. No. L-98-

3828.  In Assaad, this Court granted Summary Judgment in favor of the defendant, because the plaintiff was unable to satisfy his evidentiary burden under McDonnell Douglas Corp. v. Green, 411 U.S. 791 (1973).  Although the defendant conceded that the plaintiff had established a *prima facie* case of age discrimination, the plaintiff could not establish that the RIF was merely a pretext for age discrimination.  The Court will incorporate the reasoning that it set forth in its Memorandum and Order in Assaad granting Defendant's Motion for Summary Judgment and attach a copy of the Memorandum and Order hereto.

### III. Conclusion

For the reasons set forth in Assaad, the Court shall, by separate Order, GRANT Defendant's Motion for Summary Judgment and DIRECT the Clerk of the Court to close case.

Dated this 12 day of April, 2000.

                                                          _____
                                                          Benson Everett Legg
                                                          United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AYAAD ASSAAD,
    Plaintiff,

v.                CIVIL NO. L-98-3828

LOUIS CALDERA,
SECRETARY OF THE ARMY,
    Defendant.

*as attachment to L-98-1696 memorandum*

MEMORANDUM

Plaintiff Ayaad Assaad brought this action against Louis Caldera, the Secretary of the Army, alleging that the Army discriminated against him on the basis of age, race, and national origin in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C.A. § 621, et seq. (West 1994), Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-5(f) (West 1994), and 42 U.S.C.A. § 1983 (West 1994). On September 29, 1999, the Court granted Defendant's Motion for Summary Judgment on all counts but the age discrimination count. The defendant has now filed a second Motion for Summary Judgment on the age discrimination count. The parties have briefed the issues and the Court dispenses with a hearing. See Local Rule 105.6 (D. Md. 1999). For the following reasons, the Court shall GRANT the Motion for Summary Judgment.

I.   Background

Plaintiff is a fifty year old male who was born in Egypt and

1

emigrated to the United States in 1976. He attended the College of Veterinary Medicine in Cairo, where he received the degree of B.V.Sc. in 1973. Following his emigration, the plaintiff passed the exams conducted by both the Iowa and Georgia State Board of Veterinary Medical Examiners. He also completed the requirements for a Masters of Science with a major in Veterinary Clinical Sciences and the requirements for a Doctor of Philosophy with a major in Veterinary Physiology.

The United States Army Medical Research Institute of Infectious Diseases (USAMRIID) is an Army laboratory whose primary mission is to research and develop counter-measures against biological warfare threats. Since 1995, Colonel David Franz has been the commander of USAMRIID.

The United States Army Medical Research and Material Command (USAMRMC) is the entity from which USAMRIID receives its commands and to which USAMRIID reports. Since 1994, Brigadier General Russ Zajtchuk has been the commander of USAMRMC. Both USAMRIID and USAMRMC are located at Fort Detrick, Maryland.

In 1988, the United States Army Medical Research Institute of Chemical Defense hired the plaintiff as a laboratory physiologist under the supervision of LTC Nancy Jaax. While in this position, the plaintiff made the significant discovery that the time for toxic gases to impact the lungs was hours shorter than the time previously thought. In 1989, the plaintiff followed LTC Jaax when she was transferred to USAMRIID. In 1990,

2

the plaintiff was transferred to serve under the command of Col. David Franz.  Plaintiff's division chief was LTC Wilhelmson. Until May 1997, the plaintiff was employed by USAMRIID as a physiologist, grade GS13.  While at USAMRIID, the plaintiff developed a vaccine against Ricin, a biological warfare agent.

Beginning in 1991, due to budget cuts, USAMRMC mandated that USAMRIID decrease the size of its civilian personnel by specified amounts.  (See Def. Ex. 1.)  From 1991-1994, USAMRIID achieved these cuts solely through the Voluntary Early Retirement Authority (VERA) and Voluntary Separation Incentive Programs (VSIP).  (See id.)  In 1995, however, USAMRIID was unable to satisfy the quotas through mere attrition.  Col. Franz therefore effected a reduction in force (RIF), eliminating positions that could most easily be contracted out, namely one mathematician, four animal caretakers, and two lab workers.  (See Def. Ex. 1, 8.)  Four of these individuals were over forty years old, one individual was 29 years old, one individual was 34 years old, and one individual was 37 years old.  (See Def. Ex. 8.)

In 1996, pursuant to another order to decrement personnel, Col. Franz RIFed one statistician, two physiologists, and two bio-science lab technicians.  (See id.)  Three of these individuals were over forty years old, one individual was thirty-seven years old, and one individual was twenty-six.  (See id.) Prior to this RIF, Col. Franz wrote a memorandum seeking relief from the ordered decrement.  (See Def. Ex. 9.)  Col. Franz stated that during the decrements from 1997 to 1999 he wished to protect

those scientists who were "younger" and "junior."  (Id.)

In May 1996, the Secretary of the General Staff of USAMRMC informed Col. Franz that USAMRIID was to decrement eleven more civilian positions.  (See Def. Ex. 1, 10.)  As in the previous year, Col. Franz wrote a memorandum seeking relief from the ordered decrements.  (See Def. Ex. 1, 11.)  This memorandum emphasized that any further cuts in personnel would affect USAMRIID's ability to attract and retain qualified scientists necessary for the mission of the research institute.  USAMRMC denied Col. Franz's request for relief from these cuts.  (See Def. Ex. 1, 12.)

Following the decrement orders, Col. Franz RIFed the remaining three physiologists, one pharmacologist, one secretary, one information management specialist, and one computer assistant.  (See Def. Ex. 8.)  Among those RIFed was the plaintiff.  All of the positions RIFed, except for the secretary, were held by individuals over the age of 40.  The secretary was 39 at the time of the RIF.

Col. Franz had sole discretion over which positions to RIF.  (See Def. Ex. 1.)  Col. Franz explained that he based his decisions of which positions to RIF solely on mission need.  (See id.)  According to Col. Franz, positions such as physiologists and pharmacologists were known throughout the institute to have been on the "endangered list" for more than one year.  (See id.)  Col. Franz  believed that the plaintiff's position as a physiologist contributed a lesser role toward the institute's

4

mission than did other positions such as gene engineers because the plaintiff's testing of vaccines is not as necessary as the actual development of protective vaccines from genes. (See id.)

Upon termination, the plaintiff filed a formal complaint with the Department of Defense Office of Complaint Investigations (OCI), alleging discrimination based on age, race, and national origin; the instant suit followed. The Court previously granted Summary Judgment in favor of the defendant on Plaintiff's allegations of discrimination based on race and national origin, but denied without prejudice Defendant's Motion for Summary Judgment on the age discrimination claim.

## II.  Summary Judgment Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in

5

the light most favorable to the non-moving party. <u>Pulliam Inv. Co. v. Cameo Properties</u>, 810 F.2d 1282, 1286 (4th Cir. 1987).

**III. Discussion**

The plaintiff claims that Col. Franz terminated his employment at USAMRIID based on the plaintiff's age in violation of the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C.A. § 621, et seq. (West 1994). The ADEA prohibits employers from discriminating against employees on the basis of age. See 29 U.S.C.A. § 623. The protected class includes all employees who have reached the age of 40. See 29 U.S.C.A. § 631.

The familiar burden-shifting standard set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 791 (1973), applies to Mr. Assaad's claim: if the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; if the defendant provides such a reason, the plaintiff must then demonstrate that the proffered reason was a pretext. See <u>Gillins v. Berkeley Electric Cooperative, Inc.</u>, 148 F.3d 413 (4th Cir. 1998); <u>Vaughan v. The Metrahealth Co.</u>, 145 F.3d 197 (4th Cir. 1998); <u>Burns v. AAF-McQuay, Inc.</u>, 96 F.3d 728, 731 (4th Cir. 1996); <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310 (4th Cir. 1993); <u>Equal Employment Opportunity Comm'n v. Clay Printing Co.</u>, 955 F.2d 936, 940 (4th Cir. 1992). Although the burden of

6

production shifts, the plaintiff retains the burden of persuasion throughout all stages of proof. See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731 (4th Cir. 1996).

To establish a *prima facie* case, an ADEA plaintiff must show that (i) he is a member of a protected class; (ii) he was qualified for his position and met his employer's legitimate expectations; (iii) he was discharged without regard to his qualifications and performance; and (iv) following discharge, he was replaced by someone outside the protected class with comparable qualifications. See Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998). Because USAMRIID terminated Mr. Assaad's employment due to a reduction-in-force, and therefore did not replace him, Mr. Assaad can satisfy the fourth prong by showing that either (i) similarly situated employees outside the protected class were retained in the same position or (ii) age was not a neutral factor in the decision-making process. See Causey, 162 F.3d at 802; Blisten v. St. John's College, 74 F.3d 1459, 1470 (4th Cir. 1996).

The defendant has conceded that Mr. Assaad has established a *prima facie* case for the purposes of this motion. Under the McDonnell Douglas burden shifting standard, the defendant must therefore offer a legitimate nondiscriminatory reason for the RIF. See Mitchell v. Data General Corp., 12 F.3d 1310, 1317 (4th Cir. 1993). Defendant asserts that USAMRIID terminated Mr.

7

Assaad's employment as part of a RIF. Col. Franz further claims that he targeted physiologists for the RIF because they are not as important to USAMRIID's mission as other science positions, such as microbiologists and immunologists. (See Def. Ex. 1, at 20-21.) USAMRIID's greater need for positions other than Mr. Assaad's position satisfies the defendant's burden of production for a legitimate nondiscriminatory explanation of the plaintiff's termination. See, e.g., Vaughan, 145 F.3d at 200 (finding that a downsizing policy satisfied the employer's burden of production).

Mr. Assaad must therefore establish that the defendant's nondiscriminatory reason was merely a pretext for age discrimination. See Vaughan v. Metrahealth Co., 145 F.3d 197, 201 (4th Cir. 1998). The Fourth Circuit has developed a "pretext plus" standard for the plaintiff's burden, stating that "to survive a motion for summary judgment under the McDonnell Douglas paradigm ...[t]he plaintiff must have developed some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." Id. at 202.

Mr. Assaad is unable to establish that the RIF was merely a pretext for age discrimination. Although all the research scientists RIFed in 1997 were over the age of 40, USAMRIID retained several research scientists within the protected class. (See Def. Ex. 13.) According to USAMRIID's employment database, USAMRIID retained all chemist and microbiologist positions,

8

approximately sixty of which were held by individuals within the protected age group. Indeed, more than fifteen retained scientists were older than the plaintiff. (See id.) The record therefore clearly demonstrates that the RIF targeted the research positions rather than age groups.

Mr. Assaad points to Col. Franz's intent to protect the "young" and "junior" scientists as evidence of Col. Franz's discriminatory motive for the RIF. Col. Franz explained that the term "younger" referred to skill sets rather than age. (See Def. Ex. 3.) Further, these statements alone, without any other evidence of discrimination, do not overcome Mr. Assaad's "pretext plus" burden. See Birkbeck v. Marvel Lighting Corp., 30 F. 3d 507, 512 (4th Cir. 1994).

Because Mr. Assaad is unable to satisfy his evidentiary burden under McDonnell Douglas, Summary Judgment in favor of the defendant is appropriate.

IV. Conclusion

For the foregoing reasons, the Court shall, by separate Order, GRANT Defendant's Motion for Summary Judgment, and DIRECT the Clerk of the Court to close the case.

Dated this 17th day of April, 2000.

Benson Everett Legg
United States District Judge

9