FILED 2002 SEP 30 P 4: 56

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KULTHOUM A. MEREISH v. LOUIS CALDERA, SECRETARY OF THE ARMY | : | CIVIL NO. L-98-1696 |
| AYAAD ASSAAD v. LOUIS CALDERA, SECRETARY OF THE ARMY | : | CIVIL NO. L-98-3828 |
| RICHARD D. CROSLAND v. LOUIS CALDERA, SECRETARY OF THE ARMY | : | CIVIL NO. L-99-2280 |

**MEMORANDUM**

Now before the Court are Defendant's Motion for Summary Judgment and Plaintiffs' Motions for Summary Judgment. For the reasons stated below, the Court shall, by separate Order, GRANT Defendant's Motion for Summary Judgment and DENY Plaintiffs' Motions for Summary Judgment.

**I. Background**

Drs. Kulthoum A. Mereish, Ayaad Assaad, and Richard D. Crosland ("Plaintiffs") were terminated from their employment with the United States Army Medical Research Institute of



Infectious Diseases ("USAMRIID") as part of a 1997 reduction in force ("RIF"). In separate suits, Dr. Crosland alleged that he was terminated from his employment on the basis of age. Dr. Assaad alleged that he was terminated because of his age, race, and national origin. Dr. Mereish alleged that she was terminated because of her age and national origin. This Court granted summary judgment to the Defendant on all the claims made under Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act. The Plaintiffs appealed this Court's decision.

In an unpublished opinion dated October 13, 2000, the Fourth Circuit Court of Appeals affirmed this Court's Orders (i) dismissing Dr. Assaad's claims of race and national origin discrimination, and (ii) dismissing Dr. Mereish's claims of employment discrimination because of her national origin.

This Court's decision to grant summary judgment to the Defendant on Plaintiffs' age discrimination claims was based, in part, upon the Fourth Circuit's "pretext-plus" test, which was subsequently rejected by the Supreme Court in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000). Due to this Court's reliance upon the now-rejected "pretext-plus" case law, the Fourth Circuit vacated and remanded the cases back to this Court for further consideration of the age discrimination claims in

light of Reeves.

Upon remand, the Court permitted further discovery and additional briefing. A lengthy oral argument was also held. Having reconsidered the facts in light of the Reeves decision, this Court once again finds that the Plaintiffs have failed to meet their burden to establish that Defendant's proffered explanation for the RIF was pretextual.

**II. Summary Judgment Standard and Applicable Law**

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).

Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Prop., 810 F.2d 1282, 1286 (4th Cir. 1987).

The Plaintiffs claim that they were terminated based on their age in violation of the Age Discrimination in Employment Act (ADEA), as amended, 29 U.S.C.A. § 621, et seq. The ADEA prohibits employers from discriminating against employees on the basis of age. See 29 U.S.C.A. § 623. The protected class includes all employees who have reached the age of 40. See 29 U.S.C.A. § 631.

The familiar burden-shifting standard that the Supreme Court set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to Plaintiffs' claims: if the plaintiff establishes a prima facie case,[1] the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions; if the defendant provides such a reason, the plaintiff must then demonstrate that the proffered reason was a pretext.[2] See Gillins v. Berkeley Elec. Coop., Inc., 148 F.3d 413 (4th Cir. 1998). Although the burden of production shifts, the plaintiff retains the burden of persuasion throughout all the stages of proof. See Burns v. AAF-McQuay, Inc., 96 F.3d 728, 731

---

[1]For purposes of this motion, the Court assumes *arguendo* that the Plaintiffs have met their prima facie burden.

[2]The Plaintiffs must produce evidence that the Defendant's proffered explanation is false; they are no longer required to introduce additional independent evidence of discrimination. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 149 (2000).

(4th Cir. 1996).

**III. Discussion**

Beginning in 1991, Colonel David Franz, the Commander of USAMRIID, was forced by budget cuts to make reductions in the civilian work force. Colonel Franz objected to eliminating any positions, and he made several forceful requests to his superiors for relief from the mandated "decrements." (Def. Ex. 12.) His requests, however, were denied.

From 1991-1994, USAMRIID achieved these cuts solely through the Voluntary Early Retirement Authority and Voluntary Separation Incentive Programs. In 1995, 1996, and 1997, however, Colonel Franz utilized RIFs. (Franz Aff. at 1.) He decided to use RIFs instead of voluntary attrition to ensure that USAMRIID would maintain the appropriate balance of technical expertise needed to accomplish its mission. (Def. Ex. 12.) Colonel Franz believed that, "[T]he way to make an organization stronger [was not] just by allowing people who want to go to go." (Def. Ex. 9 at 41.)

Throughout this time, USAMRIID's mission was expanding. The agency was stepping-up its efforts to develop vaccines and combat the threat of biological terrorism. (Franz Aff. at 1.) Colonel Franz testified on deposition that USAMRIID needed to retain a strong technical base. (Franz dep. at 27.) Changes in technology and mission simply made some specialties more

pertinent than others, Colonel Franz averred. Colonel Franz also testified that in deciding which positions to eliminate, he kept in mind the need to preserve USAMRIID's ability to perform its mission. (Franz Dep. at 26.) Colonel Franz further testified that he took this responsibility seriously because he believed USAMRIID'S mission to be critical to national security. Id.

The contemporaneous record supports Colonel Franz's testimony. In one letter to his superiors, Colonel Franz decried the cuts, which, he argued, would negatively impact his "staff of key scientific professionals." (Def. Ex. 10.) He explained that he needed to protect the scientists that were the "core of [his] molecular biological vaccine development effort."[3] He believed

---

[3]Colonel Franz's full statement was, "It is the young, bright, junior scientists (the core of our molecular biological vaccine development effort) that I must attempt to protect." When asked to explain this passage, Franz maintained that he was referring to molecular biologists, especially those with the most up-to-date training. Scientists in this "hot" rapidly evolving discipline were generally the younger, more junior scientists. It was not their age that he wanted to protect, Franz argues, but their more modern scientific skill sets. (Franz Dep. at 25.)

Plaintiffs contend that Colonel Franz's comments evidence a desire to purge older scientists simply because they are older. Colonel Franz's comments, however, are not sufficient to establish pretext. First, the Fourth Circuit Court of Appeals has repeatedly held that stray remarks do not demonstrate discriminatory intent. See O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 549 (1999). Second, Plaintiffs present no evidence that the most recent graduates were not equipped with the most modern training in the discipline. Moreover, as will be discussed infra, an analysis of the scientists terminated and retained fails to support the hypothesis that the scientists were chosen because of their age rather than their discipline.

them to be "irreplaceable." Id.

Colonel Franz's philosophy was to RIF positions that were not "absolutely needed for the development of key countermeasures." (Franz Aff. at 2.) In 1997, he decided to eliminate all of the pharmacologist and physiologist positions.[4] When asked why he chose to eliminate the position of pharmacologist, Colonel Franz responded that he did not "believe that [it] is an area in which we're going to make a big difference for the soldier." (Def. Ex. 9 at 51.)

The elimination of all pharmacologists and physiologists, resulted in the termination of Dr. Mereish (a pharmacologist), Dr. Assaad (a physiologist) and Dr. Crosland (a physiologist). Plaintiffs claim that they were RIFed because they were over the age of 40. At the time, Dr. Crosland was 51, Dr. Assaad was 48 and Dr. Mereish was 43.

There is no evidence that Colonel Franz chose to eliminate the pharmacologist and physiologist positions in order to get rid of older scientists. In fact, it would have been very difficult for Colonel Franz to avoid eliminating scientists who were over the age of 40, considering that out of 80 scientists on staff, only 13 were under the age of 40. (Def. Ex. 6.) It would,

---

[4]With the elimination of these two categories, four scientists were terminated.

likewise, have been impossible for Colonel Franz to have eliminated any category of scientists without terminating more older scientists than younger.

If Colonel Franz's true mission was to oust older scientists, as Plaintiffs claim, he could have chosen to eliminate the position of research chemist, which would have terminated 22 scientists over the age of 40, eight of whom were older than Dr. Crosland, the oldest of the Plaintiffs. Id. Of the 76 scientists who remained after the 1997 RIF, 17 were older than Dr. Crosland, 27 were older than Dr. Assaad, and 48 were older than Dr. Mereish. Id.

No reasonable jury, when viewing the evidence, could conclude that it was the scientists themselves, and not the categories, who were chosen for elimination. Colonel Franz retained every microbiologist, biologist, research biologist, chemist, and research chemist, regardless of their age. In fact, the oldest scientist on the USAMRIID staff was Dr. Robert Wannamacher, who, at 68 years-old, took over and redirected Dr. Assaad's ricin vaccine research after Dr. Assaad was RIFed.

This Court is not in a position to second guess Colonel Franz's assessment that micro-biologists were more central to USAMRIID's mission than pharmacologists and physiologists. It does not stand to reason, however, that the head of USAMRIID,

especially one who had so vehemently fought his superiors over cutting any scientist's position, would have terminated disciplines that he considered vital to his mission simply for the purpose of weeding out several older employees.

Based upon the evidence presented, no reasonable jury would conclude that Colonel Franz's stated reasons for selecting the categories of pharmacologist and physiologist for elimination were a pretext for age discrimination. Accordingly, summary judgment must be granted for the Defendants.

**IV. Conclusion**

For the reasons stated above, the Court shall, by separate Order, GRANT Defendant's Motion for Summary Judgment, DENY Plaintiffs' Motions for Summary Judgment and direct the CLERK to CLOSE the CASE.

Dated this 30 day of September 2002.

Benson Everett Legg
United States District Judge